*Formatted for Electronic Distribution*                                                                                          *Not for Publication*



**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

Filed & Entered
On Docket
July 26, 2013

_____

**In re:**
    R. Brown & Sons, Inc.,                                   Chapter 11
        Debtor-in-Possession.                         Case # 13-10449

_____

Appearances:  Ray Obuchowski, Esq.                   Andre Bouffard, Esq.
                 Jennifer Emens-Butler, Esq.         Downs Rachlin Martin, PLLC
                 Obuchowski & Emens-Butler, PC    For Rathe Salvage, Inc.
                 For the Debtor-in-Possession

**MEMORANDUM OF DECISION**
**DESIGNATING SHERIFFS AS CUSTODIANS AND STORAGE ENTITIES AS CUSTODIANS' AGENTS,**
**AND DIRECTING CUSTODIANS AND AGENTS TO FILE ACCOUNTINGS PURSUANT TO 11 U.S.C. § 543(B)(2)**

R. Brown & Sons, Inc. (the "Debtor") seeks a determination on the allowance and amount of pre-petition and post-petition storage claims of LaRoche Towing & Recovery, Inc., and New England Quality Service, Inc., d/b/a Earth Waste & Metal, and alleges the fees these entities seek for storage charges are unreasonable. Prior to a determination of the reasonableness and allowance of the storage fees, the Court must adjudicate the status of the parties now seeking payment of fees and costs associated with the writ of execution and levy on the Debtor's equipment, and the nature of the parties' claims. For the reasons set forth below, the Court finds that (1) the Sheriff of Rutland County and the Sheriff of Washington County are custodians within the meaning of §§ 101(11) and 543 of the Bankruptcy Code, (2) LaRoche Towing & Recovery, Inc., and New England Quality Service, Inc., d/b/a Earth Waste & Metal are agents of the two custodians, (3) these entities must each file an accounting in satisfaction of the requirements of § 543 and Bankruptcy Rule 6002, and (4) all four of these entities are entitled to reimbursement and compensation pursuant to § 543(c)(2), to the extent they apply for it and demonstrate the sums they seek are reasonable. Accordingly, the Court directs the Sheriffs, Earth Waste Systems, and LaRoche Towing & Recovery, Inc., to each file an accounting pursuant to § 543(b)(2).[1]

---
[1] All statutory citations refer to Title 11 U.S.C. (the "Bankruptcy Code") unless otherwise indicated.

<u>JURISDICTION</u>

This Court has jurisdiction over these contested matters pursuant to 28 U.S.C. §§ 157 and 1334, and declares them to be core proceedings under 28 U.S.C. § 157(b)(2)(A) and (B), on which it has authority to enter final judgment.

<u>PROCEDURAL HISTORY</u>

On June 18, 2013, when the Debtor commenced this voluntary Chapter 11 case, much of its equipment was under the control of the Washington County and Rutland County Sheriffs (the "Sheriffs"), who had levied on it pursuant to a State court writ of execution. Rathe Salvage, Inc. ("Rathe"), the creditor who had obtained a $440,095 judgment against the Debtor, and the writ of execution, in State Court, is the largest creditor in this case.[2] On June 21, 2013, the Debtor filed an emergency motion for turnover of its equipment (doc. # 17) (the "Turnover Motion"). An exhibit to the Turnover Motion listed ten (10) pieces of equipment upon which the Sheriff had levied, specified whether each piece was being held by New England Quality Service, Inc. d/b/a Earth Waste & Metal Systems in Castleton, Vermont ("EWS") or La Roche Towing and Recovery, Inc. in Barre, Vermont ("LRT"), and indicated that the value of the equipment totaled $432,500. The Court set a hearing on the Turnover Motion for July 2, 2013.

On June 28, 2013, Rathe filed an opposition to the Turnover Motion (doc. # 29) (the "Opposition"), affirming that it had obtained a writ of execution against the Debtor and that the Sheriffs levied on the equipment listed in the Turnover Motion. However, the Opposition asserted that the Debtor overvalued the seized equipment in the Turnover Motion, and that the Debtor was and is liable to the Sheriffs, EWS and LRT for the levy and storage expenses totaling approximately $8,115 and $73,125, respectively. Finally, the Opposition argued that the Turnover Motion was procedurally defective because turnover relief is only available through an adversary proceeding (citing Bankruptcy Rule 7001), and the Debtor failed to serve the Sheriffs, the parties whom Rathe declared to be the custodians of the Debtor's property (citing 12 V.S.A. § 2731). In the Opposition, Rathe asked that the Court condition any turnover of the equipment to the Debtor upon (i) the Debtor paying all levy and storage charges, (ii) Rathe retaining its status as a secured creditor, and (iii) the Debtor paying Rathe adequate protection payments pursuant to §§ 361, 362, and 363. At the July 2nd hearing, the parties indicated that they were close to a final settlement on the turnover and adequate protection disputes, and, at their request, the Court adjourned the hearing to July 9, 2013.

Just prior to the July 9th hearing, the parties filed a joint stipulation which addressed all issues raised in the Turnover Motion, as well as those raised in Rathe's Opposition and request for adequate

---

[2] There are only six creditors in this case, and two of them are insiders.

protection, with the exception of the issue of the reasonableness of the storage fees (doc. # 34) (the "Stipulation"). The Stipulation provided as follows:

(a)  EWS and LRT would release all seized equipment except the 2008 Lincoln Towncar titled in the name of Robert Brown personally;

(b) the Debtor would have full use of the remaining nine (9) pieces of equipment, subject to the restrictions imposed by the Bankruptcy Code and the execution lien of Rathe;

(c) the Towncar could be moved to a location determined by Rathe, where no further storage fees would accrue;

(d) Rathe would not schedule a sale until after August 31, 2013, but unless there was a court order directing otherwise, it could sell that vehicle anytime after August 31st;

(e)  the Debtor would immediately give a certified check to Rathe for $10,000, to be applied toward storage fees, *pro rata*, with the issue of whether those fees are reasonable, and with what priority they shall be paid, to be determined by this Court, noting that the Debtor agreed not to oppose allowance of all post-petition storage fees as administrative expenses to the extent approved by this Court;

(f)  the Debtor would pay $750 per week to Rathe as adequate protection payments, commencing on July 10, 2013;

(g) the Debtor would file a disclosure statement and Chapter 11 plan by July 31st and the plan would pay a 100% dividend to all creditors, with failure of the Debtor to comply with this provision being grounds for Rathe to seek dismissal or conversion of this case and proceed with an immediate sale of Mr. Brown's Towncar;

(h)  Rathe would retain its lien on the equipment as it existed on the date of the bankruptcy filing and could file a copy of the Stipulation in any public office it deemed necessary to perfect and protect its interest in that equipment; and

(i) the Debtor would keep the equipment subject to Rathe's lien insured for at least $400,000, name Rathe as a loss payee on the policy insuring that equipment, and provide Rathe with proof of such insurance.

The U.S. Trustee, as well as creditors Langrock, Sperry & Wool, LLP, and TD Bank, consented to entry of the Stipulation (doc. ##  36, 42 and electronic consent filed July 9th). The Court entered an Order approving the Stipulation on July 9th (doc. # 39).

THE INSTANT MOTIONS

It is in the context of this factual and procedural background that, on July 16th, the Debtor filed, on shortened notice, motions for the determination and allowance of the pre-petition and post-petition storage fees sought by EWS and LRT (doc. ## 44, 45, 46, 49) ("Storage Fee Allowance Motions"). In those motions, the Debtor argues that the fees charged by EWS and LRT, $43,875 and $29,250,

respectively, are significantly above the market rate and therefore not reasonable. The Debtor attached exhibits to the Storage Fee Allowance Motions that purport to list the rates charged by other storage facilities to store similar, very large equipment in Vermont, and concludes that if one applied the average daily rate from those other facilities, the total fees the Debtor would owe for the four months of storage of its equipment to EWS and LRT would be $2,690 and $1,794, respectively, and even if one were to include the EWS and LRT daily rates in the computation of the daily average, the total fee would still be only $9,554 and $6,369, respectively – or a total of $15,923 versus the $73,125 sum Rathe represents is due to EWS and LRT. The Court set a hearing on these emergency motions for July 23, 2013. On July 22nd, Rathe filed a consolidated response to the Debtor's Storage Fee Allowance Motions (doc. # 54), in which it concurs with the Debtor's recitation of facts, but (i) avers upon information and belief that the fees EWS and LRT have charged are reasonable; (ii) raises issues as to whether service on EWS and LRT is sufficient, and whether the Sheriffs are the custodians here and thus necessary parties; and (iii) asks the Court to allow the claims and administrative expenses of the storage providers to the extent permitted by the Bankruptcy Code. Neither EWS, LRT, nor either of the Sheriffs filed a response to the Debtor's Storage Fee Allowance Motions.

At the July 23rd hearing, the Debtor, Rathe and the U.S. Trustee appeared and presented their positions on the record. The Court concluded that in order to make a determination as to the allowance of the storage fees, as a claim for the pre-petition period and as an administrative expense for the post-petition period, it would need a specific accounting of the fees being charged and evidence as to the reasonableness of those fees. Upon request of the U.S. Trustee, the Court decided it was appropriate to direct the filing of a custodian's accounting pursuant to 11 U.S.C. § 543[3] and Bankruptcy Rule 6002(a)[4] in order to bring before the Court all information necessary for the Court to make a determination

---

[3] Section 543 provides, in pertinent part, as follows: § 543. Turnover of Property by a Custodian

(b) A custodian shall --
    (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and
    (2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.
(c) The Court, after notice and a hearing, shall –
    (2) provide for payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian; . . .

[4] Bankruptcy Rule 6002 provides, in pertinent part: Rule 6002. Accounting by Prior Custodian of Property of the Estate

a) Accounting Required. Any custodian required by the Code to deliver property in the custodian's possession or control to the trustee shall promptly file and transmit to the United States trustee a report and account with respect to the property of the estate and the administration thereof.

4

regarding the extent, allowance and priority of claims and administrative expenses related to the seizure and storage of the Debtor's equipment pursuant to the writ of execution. The Court continued the hearing on the Debtor's Storage Fee Allowance Motions to August 27, 2013, indicated that the hearing would be an evidentiary hearing for which the Court would set aside 90 minutes, directed the Debtor to file a timely notice of evidentiary hearing pursuant to the local rules (see Vt. LBR 9014-1), and confirmed that Part VII of the Federal Bankruptcy Rules would apply (see Fed. R. Bankr. P 9014).

DISCUSSION

*Designation of Custodian for Purposes of the § 543 Accounting*

In order to frame the issues for the hearing on the Debtor's Storage Fee Allowance Motions, the Court decided at the July 23rd hearing who the "custodian" is in this case, and, in light of the role of EWS and LRT in carrying out the Sheriffs' storage duties, who is required to file a § 543 accounting. This memorandum of decision is issued to set out the Court's rationale for those decisions.

The starting point for designating the custodian in this case is the definition of that term in the Bankruptcy Code:

> a custodian is an agent under applicable law that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property.

11 U.S.C. § 101(11). State statutes direct the Sheriffs to levy upon assets pursuant to writs of execution. 12 V.S.A. § 2681 et seq. In light of this State law direction, the Court finds the custodians in this case are the Rutland County Sheriff and the Washington County Sheriff who, acting pursuant to the State court writ of execution, seized and took charge of the Debtor's property for the purpose of enforcing Rathe's lien against it. There is no dispute that the Sheriffs entered into arrangements with EWS and LRT to store the equipment, and that, until it was released, EWS and LRT were responsible for the storage of the seized equipment. The Court therefore finds EWS and LRT to be agents of the Sheriffs with respect to possession and storage of the Debtor's equipment, who actually effectuated the necessary custodial duties of the Sheriffs.

Bankruptcy jurisprudence does not establish any clear guidelines as to who qualifies as a custodian under § 101(11). Some courts have construed the definition broadly. See Matter of Kennise Diversified Corp., 34 B.R. 237, 244-45 (Bankr. S.D.N.Y. 1983) ("[T]his definition is broad and includes third parties who have taken charge of the debtor's assets for the general benefit of creditors. Furthermore, it appears that a custodian is primarily concerned with pre-petition liquidation of a debtor's property or the protection of creditor's rights."); In re Gold Leaf Corp., 73 B.R. 146, 149 (Bankr. N.D. Fl. 1987) (holding that the definition should be broad and not limited merely to a pre-petition liquidator of the estate, but noting that "in virtually all of the cases in which the issue arises, the 'custodian' took

possession of assets for the express purpose of preserving those assets for the benefit of creditors."). However, in In re Lewis, the court articulated the importance of avoiding an overly broad definition of custodians, stating "if the definition of 'custodian' in 11 U.S.C. § 101([11]) is not strictly and narrowly construed, the situations to which it could be applied are limitless. If broadly construed, there would be little reason from excluding a custodian from 11 U.S.C. § 542." 12 B.R. 106, 109 (Bankr. N.D. Ga. 1981). In Lewis, the court held that a secured creditor, holding repossessed property as a result of self-help enforcement of its security interest, was not a custodian because the creditor was acting for its own benefit, not under mandatory authority to take charge of the debtor's property for benefit of the debtor's creditors as a whole. See also In re Camdenton United Super, Inc., 140 B.R. 523, 525 (Bankr. W.D. Mo. 1992) (stating that the bank, holding funds pursuant to a voluntary escrow agreement between the debtor and a creditor for six months, was not "custodian" of debtor's property because it was acting neither under court appointment nor under assignment for benefit of creditors, and bank was not administering escrow funds for benefit of debtor's creditors.).

This Court takes a middle path, agreeing that the definition of a bankruptcy custodian should not be overly broad but finding the Lewis definition to be too narrow. This Court will identify a party as a custodian in a bankruptcy case if (a) the party holds assets under applicable law, (b) the party was appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against that property, and (b) such property, if returned to the debtor, would be subject to administration by a bankruptcy trustee or used to generate funds for distribution through a plan of reorganization. This position is consistent with the position taken in In re Skinner, 213 B.R. 335 (Bankr. W.D. Tenn. 1997), where the bankruptcy court analyzed whether a sheriff – who levied upon the debtor's property pursuant to a writ of execution on a judgment – constituted a custodian of the debtor's seized property and answered in the affirmative "because he or she is an agent appointed to take charge of the property of the debtor for the purpose of enforcing a lien against such property," and specifically found that "nothing in the Bankruptcy Code's definition of custodian requires a custodian to hold property for the benefit of all the debtor's creditors." Id. at 337. In sum, the Sheriffs who levied on the Debtor's property pre-petition, pursuant to the writ of execution, are custodians for purposes of this bankruptcy case and therefore required to perform the duties of a custodian as set out in § 543.

This leads to the question of what role LRT and EWS have played for purposes of this bankruptcy case. Rathe argues that they are bailees. The Court finds this argument to be without merit. Their conduct and role with respect to the Debtor's equipment does not fit within the definition of bailee under Vermont law, which says a "bailee" is the person who by a warehouse receipt, bill of lading or other document acknowledges possession of goods and contracts to deliver them. 9A V.S.A. § 7-102.

6

LRT and EWS are involved in this case solely because the Sheriffs hired them to store the equipment which, under state law, the Sheriffs were required to maintain, at the Debtor's expense:

> Levy on personal property:
>
> When the execution with costs is not paid on demand the officer shall levy the same upon the goods or chattels of the debtor or such as are shown him by the creditor, and the same shall be safely kept by the officer at the debtor's expense, until sold or the execution is otherwise satisfied.

12 V.S.A. § 2731. The designation that most accurately describes the role of LRT and EWS in this bankruptcy case is that of agents of the custodians.

Section 543 requires all custodians to file an accounting. See § 543(b). Where, as here, the custodian's agents also provided services and incurred expenses in connection with the storage of a debtor's property consistent with State law, they too must file and accounting in the bankruptcy case. The accounting must delineate all expenses they incurred and all compensation they are seeking with respect to their seizure and/or storage of the Debtor's equipment. Moreover, in order for the Court to determine the reasonableness and corresponding allowance of the fees LRT and EWS claim for storage, and the fees the Sheriffs claim due in connection with the writ of execution and levy, pursuant to § 543(c), the parties seeking allowance and reimbursement must file a statement laying out a basis for a determination that the fees they seek are reasonable.

## CONCLUSION

For the reasons set forth above, the Court finds that (1) the Sheriff of Rutland and the Sheriff of Washington County are "custodians" in this case, as that term is defined in § 101(11), and therefore, each is required to perform the duties of a custodian as set out in the Bankruptcy Code and Rules; (2) New England Quality Service, Inc. d/b/a Earth Waste & Metal Systems, and La Roche Towing and Recovery, Inc. are agents of these custodians, for purposes of this bankruptcy case; (3) these four entities must each file an accounting in satisfaction of the requirements of § 543 and Bankruptcy Rule 6002; and (4) these four entities are entitled to reimbursement and compensation, pursuant to § 543(c)(2), to the extent they apply for it and demonstrate the sums they seek are reasonable.

This memorandum constitutes the Court's findings of fact and conclusions of law.

_____
July 25, 2013                                    Colleen A. Brown
Burlington, Vermont                              United States Bankruptcy Judge

7