UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

Filed & Entered
On Docket
September 18, 2013

_____
In re:
    **R. Brown and Sons, Inc.,**                    Chapter 11 Case
    **Debtor-in-possession.**                        # 13-10449
_____

| Appearances: | Ray Obuchowski, Esq. | Andre Bouffard, Esq. |
| --- | --- | --- |
| | Jennifer Emens-Butler, Esq. | Downs Rachlin Martin, PLLC |
| | Obuchowski and Emens-Butler, PC | Burlington, Vermont |
| | Bethel, Vermont | For Rathe Salvage, Inc. |
| | For the Debtor-in-Possession | |
| | | |
| | Peter F. Langrock, Esq. | Stephen J. Craddock, Esq. |
| | Langrock Sperry & Wool, LLP | Berlin, Vermont |
| | Burlington, Vermont | For LaRoche Towing and Recovery, Inc. |
| | Special Counsel to the Debtor-in-Possession | |

**MEMORANDUM OF DECISION**
**DETERMINING AMOUNT AND ADMINISTRATIVE PRIORITY OF STORAGE CHARGES,**
**OVERRULING THE DEBTOR'S OBJECTION TO THE ACCOUNTINGS,**
**AND FIXING ALLOWED AMOUNT OF THE STORAGE COMPANY CLAIMS**

       This Court previously determined that the Sheriffs of Rutland and Washington county were custodians for purposes of this case because they levied machinery belonging to R. Brown & Sons, Inc. (the "Debtor"), and had control and possession of that machinery on the date the Debtor filed this bankruptcy case. The Court also determined that the two companies that stored the levied property, LaRoche Towing & Recovery, Inc. and New England Quality Service, Inc., d/b/a Earth Waste & Metal Systems, acted as the custodians' agents and therefore had the same rights and responsibilities as the custodians for purposes of the Bankruptcy Code. The questions now before the Court with respect to the custodians and their agents are whether the charges relating to the levy and storage of the Debtor's equipment must be paid in this bankruptcy case, and if so, whether the full amount set forth in the accountings must be paid and with what priority. Additionally before the Court are the Debtor's motions to determine the amount and priority of the pre-petition and post-petition storage charges. The Debtor asserts the charges the custodians' agents seek are unreasonable and should therefore be disallowed.

1

For the reasons set forth below, the Court determines that, with respect to the accountings: (1) LaRoche Towing & Recovery, Inc. and Earth Waste & Metal Systems must be paid pursuant to 11 U.S.C. § 543; (2) all charges entitled to payment under § 543 are entitled to administrative expense priority under § 503, if they were actually and necessarily incurred and are reasonable; and (3) LaRoche Towing & Recovery, Inc. and Earth Waste & Metal Systems have demonstrated that the sums they seek meet these criteria. Therefore, the Court overrules the Debtor's objection to the accountings. With respect to the Debtor's motion for allowance of claims, the Court allows both LaRoche Towing & Recovery, Inc.'s and Earth Waste & Metal Systems' charges, with administrative expense priority under §§ 503 and 507, subject to the Debtor's right to timely seek an offset for any damage the storage companies caused to the stored equipment.

## I. JURISDICTION

This Court has jurisdiction over these contested matters pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by Chief Judge Christina Reiss on June 22, 2012. This Court declares these contested matters, relating to treatment of custodian charges under § 543 and allowance of the storage companies' claims under § 502, to be core proceedings under 28 U.S.C. § 157(b)(2)(A) and (E) and § 157(b)(2)(B), respectively. The Court further declares it has authority to enter a final judgment in each of these core proceedings.

## II. PROCEDURAL BACKGROUND

On February 7, 2013, judgment creditor Rathe Salvage, Inc. ("Rathe") obtained a writ of possession for ten pieces of the Debtor's machinery and equipment, valued at approximately $400,000 (the "Equipment"). On or about March 16, 2013, the Rutland and Washington county Sheriffs (the "Sheriffs") levied the property, pursuant to 12 V.S.A. § 2731. Thereafter, at Rathe's direction, the pieces of equipment that had been at the Debtor's Moretown location (in Washington county) were stored with LaRoche Towing & Recovery, Inc. ("LRT") in Barre, Vermont (in Washington county), and the pieces of equipment that had been at the Debtor's Pittsford location (in Rutland county) were stored with Earth Waste & Metal Systems ("EWS") in Castleton, Vermont (in Rutland county). According to the accountings (doc. ## 71, 76), EWS and LRT charged $50 to $100 per day to store each piece of equipment. EWS's accounting shows a total cost of $55,100, with $45,125 due for pre-petition charges, and $9,975 due for post-petition charges. LRT's accounting shows a total cost of $29,000, with $23,750 due for pre-petition charges, and $5,500 due for post-petition charges.[1]

---

[1] The figures in Debtor's motions (doc. ## 44, 45) differ slightly from these. First, the Debtor counted the total storage period to be 117 days and the towing companies counted it to be 116 days. Second, the Debtor excludes from its calculation an additional box trailer, as well as a Towncar which belongs to the Debtor's principal rather than the Debtor. The Court will address these discrepancies in the context of the Debtor's claim allowance motion, in Section III(C) of this opinion.

2

The Debtor, a scrap metal recycling and transporting business, filed a petition under Chapter 11 of the Bankruptcy Code (doc. # 1) on June 18, 2013. The Debtor filed an emergency motion for turnover (doc. # 17) on June 21, 2013, seeking return of the Equipment, which the Debtor alleged was vital to operation of its business. On July 9, 2013, the Debtor and Rathe entered into a stipulation (doc. # 34) (the "Stipulation") which resulted in the turnover of the Equipment to the Debtor. The Stipulation includes the following terms:

(a) EWS and LRT would release all seized equipment except the 2008 Lincoln Towncar (titled in the name of Robert Brown, individually);

(b) the Debtor would have full use of the remaining nine pieces of equipment, subject to the restrictions imposed by the Bankruptcy Code and the execution lien of Rathe;

(c) the Towncar could be moved to a location determined by Rathe, where no further storage fees would accrue;

(d) Rathe would not schedule a sale until after August 31, 2013, but unless there was a Court order directing otherwise, it could sell the Towncar anytime after August 31, 2013;

(e) the Debtor would immediately give a certified check to Rathe for $10,000, to be applied toward storage fees, *pro rata*, with the issue of whether the storage fees are reasonable, and with what priority they shall be paid, to be determined by this Court;

(f) the Debtor would not oppose allowance of all post-petition storage fees as administrative expenses to the extent approved by this Court;

(g) the Debtor would pay $750 per week to Rathe as adequate protection payments, commencing on July 10, 2013;

(h) the Debtor would file a disclosure statement and Chapter 11 plan by July 31, 2013, and the plan would pay a 100% dividend to all creditors, with failure of the Debtor to comply with these requirements constituting grounds for Rathe to seek dismissal or conversion of this case and proceed with an immediate sale of Mr. Brown's Towncar;

(i) Rathe would retain its lien on the Equipment as it existed on the date of the bankruptcy filing and could file a copy of the Stipulation in any public office it deemed necessary to perfect and protect its interest in that Equipment;

    (j)  the Debtor would purchase and retain insurance on the Equipment in the amount of at least $400,000, name Rathe as a loss payee on the policy insuring the Equipment, and provide Rathe with proof of such insurance; and

    (k)  the Debtor reserved the right to seek a credit, against storage fees, for any damage LRT or EWS caused to the Equipment.

(see doc. # 34). The U.S. Trustee, as well as all non-insider creditors, consented to entry of the Stipulation (doc. ## 36, 42 and electronic consent filed July 9, 2013). The Court entered an Order approving the Stipulation on July 9, 2013 (doc. # 39).

On July 16, 2013, the Debtor filed motions for determination and allowance of pre-petition and post-petition storage claims of EWS and LRT (doc. ## 44, 45), disputing the reasonableness of the fees that both entities were seeking. Rathe filed a response (doc. # 54) asking the Court to allow the storage companies' charges in full and grant those charges administrative expense priority to the extent permitted by the Bankruptcy Code. Following a hearing on July 23, 2013, this Court issued a memorandum of decision with accompanying order (doc. ## 62, 63) finding:

(1) the Sheriff of Rutland and the Sheriff of Washington county are "custodians" in this case, as that term is defined in 11 U.S.C. § 101(11), and therefore, each is required to perform the duties of a custodian as set out in the Bankruptcy Code and Rules;

(2) Earth Waste & Metal Systems, and LaRoche Towing and Recovery, Inc. are agents of these custodians for purposes of this bankruptcy case;

(3) these four entities must each file an accounting in satisfaction of the requirements of § 543 and Bankruptcy Rule 6002; and

(4) these four entities are entitled to reimbursement and compensation, pursuant to § 543(c)(2), to the extent they apply for it and demonstrate that the sums they seek are reasonable.

That ruling (doc. ## 62, 63) also directed each of the four entities to file a statement establishing the reasonableness of the sums they included in their accountings.

Subsequently, LRT filed a motion for reconsideration and memorandum of law in support thereof (doc. ## 74, 88), advancing two arguments. First, LRT argued that the Court erred in making a factual finding that the Sheriffs hired LRT and EWS to store the seized equipment. In support of this argument, LRT relied on affidavits from both Washington county Sheriff W. Samuel Hill and the owner of LRT affirming that it was Mr. Rathe who contacted LRT to make the arrangements for towing and storage, and when LRT contacted Sheriff Hill asking to whom the bill should be sent, Sheriff Hill advised him to bill

4

Rathe. Second, LRT argued that the Court's decision would have a deleterious effect on Vermont's system of enforcing writs of execution, newly placing responsibility for the costs of execution on Sheriffs, rather than the judgment creditors.

On August 23, 2013, the Court denied LRT's motion for reconsideration (doc. ## 96, 97). In its memorandum, the Court stated:

> It is not the role of this Court to determine the rights the Sheriffs and/or the storage companies might have against Rathe, whether Rathe entered into a contract with the storage companies assuming liability for their services, or whether Sheriffs acting under the pertinent Vermont statute may seek reimbursement or compensation from parties other than the judgment debtor…
>
> Whether some other party may have secondary or contingent liability for the storage fees or other expenses the Sheriffs incurred in carrying out their levy on the Debtor's equipment does not alter this Court's determination that the storage companies were acting as the Sheriffs' agents in storing the equipment. The statute is clear that the duty to keep the property safe through the date the property is sold or the execution is satisfied falls squarely and solely on the custodian (here, the Sheriffs)…
>
> Accordingly, the Court's order designating EWS and LRT as agents of the custodian for purposes of § 543 stands…

(doc. # 96, p. 4-6).

Both LRT and EWS have filed accountings (doc. ## 71, 76). Neither of the Sheriffs has filed an accounting; each of them has indicated that his claim was paid in full by Rathe [2] (doc. ## 84, 85). The Debtor filed a response to the accountings (doc. # 86) objecting to the sums LRT and EWS seek, describing the charges as unreasonable, and asking the Court to disallow them (the "Debtor's Objection to Accountings").

On August 27, 2013, the Court conducted an evidentiary hearing regarding both the sufficiency and import of the storage companies' accountings, and the Debtor's motions for determination and allowance of pre-petition and post-petition storage claims. The evidence and arguments regarding both the accountings and claims allowance motions focused primarily on the reasonableness of the storage companies' charges. Six witnesses testified and both LRT and the Debtor introduced documentary evidence. At the conclusion of the hearing, the Court offered the parties the opportunity to file memoranda of law and all parties declined. Accordingly, the matter is fully submitted.

### III. ISSUES PRESENTED

These contested matters raise four overlapping issues. First, does § 543[3] require that LRT and

---

[2] The Sheriff of Rutland county stated in his response that he does not concede he is a custodian under 11 U.S.C. § 101(11) or subject to § 543, but that in any event he had been paid in full by Rathe and is owed nothing in connection with his levy of the Equipment.

[3] All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

EWS, as agents of the custodians, be paid in this bankruptcy case? Second, if so, what is the proper classification of those pre- and post-petition charges under the Bankruptcy Code? Third, which party bears the burden of proof, what is that burden, and has that party satisfied it? Fourth, what role does the pertinent state statute play in this Court's allowance of the levy-related charges in this bankruptcy case?

## IV. DISCUSSION

### A. THE CONTROLLING STATUTES

In addressing the rights and duties of custodians and their agents, the controlling provision of the Bankruptcy Code is § 543, and it provides, in pertinent part:

**Turnover of property by a custodian**

(a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.

(b) A custodian shall—
   (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and
   (2) **file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.**

(c) The court, after notice and a hearing, shall—
   (1) protect all entities to which a custodian has become obligated with respect to such property or proceeds, product, offspring, rents, or profits of such property;
   (2) **provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian;** and
   (3) surcharge such custodian, other than an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, for any improper or excessive disbursement, other than a disbursement that has been made in accordance with applicable law or that has been approved, after notice and a hearing, by a court of competent jurisdiction before the commencement of the case under this title.

11 USC § 543(a)-(c) (emphasis added). The pertinent provision of state law which guides this Court's application of § 543 to the instant facts sets out the process for post-judgment levies on personal property:

**Levy on Personal Property**

When the execution with costs is not paid on demand the officer shall levy the same

6

> upon the goods or chattels of the debtor or such as are shown him by the creditor, and the same shall be safely kept by the officer at the debtor's expense, until sold or the execution is otherwise satisfied.

12 V.S.A. § 2731.

### B. THE ACCOUNTINGS

The issues at bar with respect to the two accountings present a question of first impression in this District, the state law aspects of which have not been addressed by the Vermont Supreme Court and the bankruptcy law aspects of which have no jurisprudence directly on point. One recent bankruptcy case, however, has remarkably similar facts and is therefore quite instructive. In In re Ohakpo, 494 B.R. 269 (Bankr. E.D. Mich. 2013), the following events occurred pre-petition: (1) the state court issued an order directing a court officer to seize property of one of the debtors and sell it to satisfy a judgment; (2) the officer seized two vehicles from the debtors' residence; (3) the officer hired two towing companies to remove the vehicles from the debtors' residence and then store the vehicles until they could be sold; (4) the officer posted a notice of sale advertising sale of the vehicles pursuant to state law; (5) the debtors filed bankruptcy before the vehicles could be sold; (6) upon that filing, the debtors' attorney requested of the officer and judgment creditor that the vehicles be returned; and (7) post-petition, the officer turned over the vehicles to the Chapter 7 trustee.

The bankruptcy court set forth a thorough and methodical analysis that included four inquiries that are applicable here: (a) whether the court officers who levied the property were "custodians" for purposes of the Bankruptcy Code; (b) whether it was the court officer, or the towing company he employed to carry out the levy, that was eligible to be paid as a custodian; (c) whether state law authorized payment of the costs associated with the levy under the facts presented; and (d) whether the amount the custodian claimed satisfied the legal criteria for treatment as an administrative expense. The Ohakpo court found that first, the court officers who levied the property were "custodians" for purposes of § 543; second, since the court officer had already paid the towing companies, the court officer was the party entitled to payment under § 543(c); third, Michigan law does not permit a levying court officer to be paid unless and until the property is sold; and fourth, to qualify as an administrative expense under § 503(b)(3)(E), the amount due must have been actually incurred, necessary and reasonable, and the services underlying the charges must have benefitted the estate. The Ohakpo holding does not answer the questions presented here because the salient Vermont statute is materially different from the Michigan statute, and the legal positions advocated by the parties at bar are quite dissimilar to the positions taken by the Ohakpo parties. However, since the facts in Ohakpo are so close to the facts underlying the legal issues raised here, and the same bankruptcy statutes and principles govern the issues presented in the two cases, that case provides useful guideposts for exploring the terrain the parties find themselves in.

**1. *§ 543 Requires that the Sheriffs' Agents be Paid Through This Bankruptcy Case*.**
(i) The Sheriffs are custodians, and LRT and EWS are their agents, for purposes of § 543.

The Ohakpo court engaged in a thorough analysis of what constitutes a custodian under the Bankruptcy Code. Based on the definition of custodian in § 101(11)[4] of the Code, the Ohakpo declared that to be a custodian one must be an "agent under applicable law," acting pursuant to an appointment or authorization to take charge of the property of the debtor, and take charge of the debtor's property "for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors." 494 B.R at 277-78. After an examination of the evidence and relevant Michigan statutes, the court concluded that the officer there was an agent of the state court, which appointed and authorized him to act as a court officer; that the state court order authorized the court officer to seize the debtor's property; and the seizure was for the purpose of enforcing a lien against the debtor's property.[5]

Here, the analysis is equally straightforward. As set out in this Court's memorandum of decision dated July 26, 2013, and further detailed in its subsequent memorandum of decision dated August 23, 2013 (doc. # 96), the relevant state statute is clear:

> The controlling Vermont statute is unequivocal that the judgment debtor is responsible for the costs of the levy and of the safe keeping of property upon which the designated officer (here, the county sheriff) levies, and the officer is charged with the duty of levying upon and protecting the property:
>> Levy on Personal Property: When the execution with costs is not paid on demand **the officer shall levy** the same upon the goods or chattels of the debtor or such as are shown him by the creditor, and the same **shall be safely kept by the officer at the debtor's expense**, until sold or the execution is otherwise satisfied.
>
> 12 V.S.A. § 2731 (emphasis added).

(doc. # 96, p. 5).

Based on an analysis similar, though not identical, to that of the Ohakpo court, this Court found that the custodians in this case are the Rutland county Sheriff and the Washington county Sheriff who, acting pursuant to the state court writ of execution, seized and took charge of the Debtor's property for the purpose of enforcing Rathe's lien against it. The Court further found that the Sheriffs entered into arrangements with EWS and LRT to store the Equipment, and that, until it was released, EWS and LRT

---

[4] (11) The term "custodian" means—
 (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
 (B) assignee under a general assignment for the benefit of the debtor's creditors; or
 (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.
 11 U.S.C. § 101(11).

[5] The court held that a second court officer, whom the first officer brought along as "backup," did not qualify as a custodian, as the state court had not authorized him to take charge of the property.

8

were responsible for the storage of the Equipment. Although the parties later demonstrated that Rathe, rather than the Sheriffs, made the arrangements with EWS and LRT, this does not change the Court's conclusion that EWS and LRT are agents of the Sheriffs with respect to possession and storage of the Equipment, because it was they who effectuated the custodial duties that the state statute imposes upon the Sheriffs.

(ii) <u>As agents of the custodian, LRT and EWS are entitled to payment in this case, under § 543</u>.

The Vermont statute makes clear that the judgment debtor is liable for the costs of safe-keeping the property upon which the court officer has levied. As of the petition date, the Sheriffs had not paid their agents. Therefore, as of the petition date, the Debtor owed the agents for all charges relating to the levy upon, and storage of, the Equipment. The pertinent bankruptcy statute is also clear: under § 543, any custodian in possession of property of the estate on the date of the filing of the petition must turn over that property to the trustee and file an accounting. <u>See</u> 11 U.S.C. § 543(b)(1). The agents were in possession of the Debtor's property on the date of the filing and were thus required to release the Equipment and file an accounting. <u>See</u> 11 U.S.C. § 543(b)(2). They were also eligible to be paid the charges reflected on the accountings. <u>See</u> § 543(c)(2).

This latter provision states that the Court, "after notice and a hearing, *shall* provide for payment of reasonable compensation for services rendered and costs and expenses incurred by such a custodian." 11 U.S.C. § 543(c)(2) (emphasis added). Although LRT has filed an accounting, it has not filed a proof of claim, and instead, appears focused on preserving its right to collect payment from judgment creditor Rathe. EWS has filed a proof of claim but has taken no further action to pursue payment from the Debtor. What rights the storage companies may have against the judgment creditor in state court is, as previously stated, a matter outside this Court's jurisdiction. However, as mandated by § 543(c), the Court can, and must, provide for payment, in this case, of the debt the Debtor owes to LRT and EWS in their capacity as agents of the custodians.[6]

The custodian statute is silent as to how, or from whom, payment shall be made. <u>Ohakpo</u>, 494 B.R. at 284. One means of providing for payment would be to direct Rathe to pay LRT and EWS and then add the sum of those payments to Rathe's secured claim. However, no party has requested that approach, and in the absence of an agreement among the parties to do this, the Court lacks Constitutional authority

---

[6] Typically, a custodian would be the party to file the accounting and it would seek payment on behalf of its agents. This was the case in <u>Ohakpo</u>, where the custodian requested the Court to order payment to the Court Officers in an amount sufficient to enable them to pay Sparks Towing Inc. However, the custodians here assert (notwithstanding 12 V.S.A. § 2731) that it is the judgment creditor, rather than the custodians, who is liable for the payment due to the agents. As this Court has already observed, the issue of how much the judgment creditor owes to the custodians' agents, if anything, is a state law question outside this Court's jurisdiction. For purposes of applying § 543 in this bankruptcy case, whether the charges are due the custodians or their agents is immaterial.

9

to compel Rathe to do this. The only payment the court may "provide" is to direct a party who is both obligated on the debt and subject to this Court's jurisdiction to make payment in a manner consistent with the Bankruptcy Code. Germane to this issue are the two Bankruptcy Code provisions which describe the process for allowance and treatment of administrative expenses in Chapter 11 cases:

> **Allowance of administrative expenses**
>
> (a) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>   (1) (A)   the actual, necessary costs and expenses of preserving the estate . . .
>   . . .
>   (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by--
>     . . . .
>     (E)   a custodian superseded under section 543 of this title, and compensation for the services of such custodian. . . .
>
> **Confirmation of plan**
>
> (a)   The court shall confirm a plan only if all of the following requirements are met:
>   . . .
>   (9)   Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—
>     (A)   with respect to a claim of a kind specified in section 507(a)(2) [administrative expenses] or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim.

11 U.S.C. §§ 503(b)(3)(E), 1129(a)(9)(A). Therefore, to the extent the charges incurred by LRT and EWS are allowed as administrative expenses, confirmation of the Debtor's plan shall be conditioned upon the Debtor paying the allowed administrative expense on the effective date of the plan (unless LRT and EWS consent to different treatment).

### 2. The Sums Due the Sheriffs' Agents under § 543 are Eligible for Treatment as Administrative Expenses Under § 503.

The parties did not specifically address the extent to which the charges should be treated as administrative expenses. In the Stipulation with Rathe, the Debtor agreed not to oppose administrative expense priority for any post-petition storage fees approved by the Court (doc. # 39, p. 3). The Debtor seeks a determination of the pre- and post-petition storage charges, and invokes Bankruptcy Code sections 501, 502, and 503 (doc # 44, 45). In its response, Rathe requests the Court grant administrative expense priority to the charges "to the extent permitted by the Bankruptcy Code" (doc # 54 at ¶ 7).

Addressing first the post-petition storage charges, the key statute is § 503(b)(1)(A). It provides administrative expense priority for the actual, necessary costs and expenses of preserving the estate. Since

10

there is no estate until the filing of a bankruptcy petition, only post-petition expenses typically qualify for administrative expense treatment under § 503(b)(1)(A). See Helen-May Holdings, LLC v. Geltzer (In re Kollel Mateh Efraim, LLC), 456 B.R. 185, 192 (S.D.N.Y. 2011). Pursuant to this general rule with respect to post-petition charges, the storage charges incurred post-petition are eligible for treatment as administrative expense priority claims. See § 503(b)(1)(A); see also In re R & G Props., 2009 Bankr. LEXIS 1318 at *12 (Bankr. D. Vt. April 30, 2009).

Next, the Court turns to the pre-petition storage charges. As noted above, generally only the charges incurred post-petition would be treated as administrative expenses. However, the treatment of pre-petition charges allocable to a custodian's fees and expenses is an exception to the general rule. The salient statute unequivocally allows administrative expense priority for custodian charges incurred pre-petition. See In re 245 Assocs., 188 B.R. 743, 748 (Bankr. S.D.N.Y. 1995) (holding § 503(b)(3)(E) applies solely to pre-petition services). Each court that has considered the issue has concluded, in part in reliance upon the legislative history, that § 503(b)(3)(E) is intended to provide administrative expense priority for a custodian's pre-petition fees and expenses. See, e.g., In re Lake Region Operating Corp., 238 B.R. 99, 101 (Bankr. M.D. Pa. 1999); 245 Assocs., 188 B.R. at 748; In re Kenval Marketing Corp., 84 B.R. 32, 34 (Bankr. E.D. Pa. 1988).

> While § 503 generally only accords an 'administrative expense' priority status to claims for post-petition services, § 503(b)(3)(E) "expressly authorizes compensation for the prepetition services of a custodian or receiver superseded under 11 U.S.C. § 543 and is an exception to the general rule with respect to the allowance of compensation for exclusively postpetition activities as an administrative expense.

Szwak v. Earwood (In re Bodenheimer, Jones, Szwak, & Winchell L.L.P.), 592 F.3d 664, 672 (5th Cir. 2009) (citing In re Snergy Props., Inc., 130 B.R. 700, 704 (Bankr. S.D.N.Y. 1991)). Therefore, the storage charges incurred pre-petition are also eligible for administrative expense priority.

### 3. The charges of LRT and EWS may only be accorded administrative expense priority if they were actually and necessarily incurred and are reasonable.

Whether the agents' charges were incurred pre-petition or post-petition, in order to qualify for administrative expense priority, they must have been actually and necessarily incurred. See R & G Props., 2009 Bankr. LEXIS 1318 at *8. [7] Numerous other courts have concluded similarly. See In re TYS, Inc., 425 B.R. 26, 38 (Bankr. D. Mass. 2010); 245 Assocs., 188 B.R. at 748.

A third requirement is that the charges must be reasonable. The custodian statute provides for "payment of reasonable compensation for services rendered and costs and expenses incurred by [a]

---

[7] The Court also required the custodian in the R&G Properties case to demonstrate that the fees were of benefit to the estate. The Court notes that "the 'benefit' requirement has no independent basis in the Code, however, but is merely a way of testing whether a particular expense was truly 'necessary' to the estate: If it was of no 'benefit,' it cannot have been 'necessary.'" Szwak 592 F.3d at 672 (citing In re H.L.S. Energy Co., 151 F.3d 434, 437 (5th Cir. 1998)). That criterion will be addressed below.

11

custodian." § 543(c)(2). At the evidentiary hearing, counsel for Rathe argued that the adjective "reasonable" modifies only the clause "compensation for services rendered," and specifically does not modify "costs and expenses." It was his position that § 543(c)(2) provides payment only of reasonable compensation but of all costs and expenses – reasonable or not.

The parties have not presented, and the Court has not found, any case law explicitly addressing this potential ambiguity in the text of § 543(c)(2). However, every case the Court has found has imposed a reasonableness requirement on all charges sought under § 543(c)(2). See In re Sevitski, 161 B.R. 847, 856 (Bankr. N.D. Okla. 1993) (denying custodian's request for administrative expense priority for his fees and expenses because they were unreasonable and excessive); In re Posadas Assoc., 127 B.R. 278, 280 (Bankr. D.N.M. 1991) (holding that the Court shall provide for the payment of expenses incurred by the custodian in preparation for the turnover if they are reasonable). Ohakpo does not squarely address the question, but states "Section 543(c)(2) requires the Court to provide for the payment of a custodian's reasonable fees and expenses." 494 B.R. at 284. In all of these cases, the courts appear to read the adjective "reasonable" to modify both the compensation and costs and expenses components of § 543(c)(2), and the Court finds this reading to most soundly implement the overall and equity-based mandates of the Bankruptcy Code.

Some courts have analogized payments sought by custodians to compensation sought by professionals. The statute governing compensation of professionals states in pertinent part that only "(A) reasonable compensation for actual, necessary services…and (B) reimbursement for actual, necessary costs" will be allowed. 11 U.S.C. § 330(a)(1)(A) and (B). As in § 543(c)(2), one might read this to mean that only the compensation allowed under § 330 must be reasonable. But, the courts have consistently interpreted this provision to require that expenses as well as compensation be reasonable, see, e.g., In re Fibermark, Inc., 349 B.R. 385, 401, 412 (Bankr. D. Vt. 2006) (holding that, across a myriad of categories, a professional's expenses may only be reimbursed if they are reasonable). Moreover, it is unlikely Congress would have intended to limit the expenses of professionals employed in a bankruptcy case to actual and necessary expenses that are reasonable, while authorizing unlimited reimbursement of all expenses to superseded custodians.

For all of these reasons, the Court determines that LRT and EWS may be paid its expenses, pursuant to § 543, only to the extent their charges were actually and necessarily incurred and are reasonable.

### 4. LRT and EWS bear the burden of proof, it is a preponderance of evidence, and LRT and EWS have met that burden.

This Court has ruled that the custodian has the burden of proof with respect to allowance of the custodian's charges. R & G Props., 2009 Bankr. LEXIS 1318 at *8. This comports with the decisions of

other courts, see Sevitski, 161 B.R. at 854 (holding burden on custodian to show his entitlement to an administrative expense priority), and applies here as well. The custodian or its agent must establish these criteria by a preponderance of the evidence. In re HNRC Dissolution Co., 343 B.R. 839, 843 (Bankr. E.D. Ky. 2006) (holding claimant has the burden of proving entitlement to an administrative expense by a preponderance of the evidence). "'Preponderance of the evidence' has been defined as the weight, credit, and value of the aggregate evidence on either side." In re Smith, 2013 Bankr. LEXIS 687, at *18-19 (Bankr. D. Vt. Feb. 22, 2013) (citing Glinka v. Bank of Vermont (In re Kelton Motors, Inc.), 130 B.R. 170, 174 (Bankr. D. Vt. 1991) (citing 30 Am. Jur. 2d, Evidence, § 1164, at 339 (2d Ed. 1967))). This standard requires the custodian or agent to prove their case as "upon all the evidence…more probably true than false." Smith, 2013 Bankr. LEXIS 687 at *19 (citing Nissho-Iwai Co., Ltd. v. M/T Stolt Lion, 719 F.2d 34, 38 (2d Cir. 1983)).

Here, the burden is on LRT and EWS to demonstrate, by a preponderance of the evidence, that their charges were actually and necessarily incurred and are reasonable. The Court will therefore review the evidence presented to ascertain whether the agents have satisfied this burden.

*(i) The charges were actual and necessary.*

The evidence shows that the Equipment was stored for a total of 116 days, of which 95 were pre-petition and 21 were post-petition. During the 21-day period following the Debtor's petition, the Debtor was actively engaged in negotiations with judgment creditor Rathe regarding adequate protection payments and conditions of turnover, and did not request that the Court rule on the turnover motion during this time. The parties entered into the Stipulation and immediately thereafter LRT and EWS released the levied property to the Debtor. No one has disputed the Debtor's statement that the Equipment is vital to its business (doc. #17 ¶ 5). Likewise, the record is clear that if Rathe had liquidated the Equipment rather than turning it over, the Debtor would not have been able to operate or generate income from which to fund a plan.

There is also no dispute in the record, and there was no evidence presented contesting, that the storage charges at issue were actually incurred or that they were necessary to effectuate the writ of execution upon which the Sheriffs were acting. Hence, the record establishes that the charges LRT and EWS were actually and necessarily incurred.

*(ii) The charges were reasonable.*

At the evidentiary hearing, the parties directed most of their arguments and evidence to the question of whether the storage fees LRT and EWS charged were reasonable. Representatives from both LRT and EWS testified that the rates they charged were their normal, customary rates for storage of this type of equipment. The EWS representative also testified that he was not aware of any other facility

13

within Rutland county capable of storing property as large as the Debtor's Equipment. The Washington county Sheriff testified that, based upon his experience, the rates LRT and EWS charged were comparable to those customarily charged for storage of this type, and were reasonable given the size of the Equipment. Sheriff Hill also testified that it was his understanding that property seized by a county sheriff must remain within that Sheriff's county.[8] The Court finds that the testimony of the LRT representative, the EWS representative, and Sheriff Hill was clear, credible and persuasive. Based upon this evidence, the Court determines that LRT and EWS proved by a preponderance of the evidence that their charges were reasonable.

Debtor's counsel failed to present sufficient evidence to call into question the facts established by the storage companies. Debtor's counsel introduced three witnesses, including the Debtor's principal, in support of its position that the fees LRT and EWS charged were not reasonable. One witness, Russell Dimmick, owner of Lucky's Trailer Sales, Inc. and Lucky's Leasing, testified he charges a much lower long-term storage rate, $50 per month, at his facilities in South Burlington. However, Mr. Dimmick also testified he had previously stored a large vehicle, on a short-term basis, after a tow truck delivered it to his facility, and in that instance, he charged $100 per day, a price identical to that charged by LRT and EWS. He explained that he charged that higher fee because he understood $100 per day was the customary storage rate under those circumstances. Additionally, Mr. Dimmick testified that his only experience with property levied by a sheriff or other court officer was in selling it, typically pursuant to an arrangement with a bank. And, when he sold property for a bank, he did not charge any fees for storing that property. Mr. Dimmick was credible, but did not effectively challenge the reasonableness of the LRT and EWS storage charges.

One of the Debtor's other witnesses, Thomas J. Hirchak, III, an auctioneer and the vice president of The Thomas Hirchak Company, testified that his company regularly stores all types of personal property at its facility, located in Williston, Vermont (in Chittenden county). He testified that his company charges a significantly lower daily rate of under $10 per day, i.e., 80-90% less than what EWS and LRT charged for storing the Debtor's Equipment. However, he made this statement in the context of his description of a large, pre-established contract with the U.S. Marshal Service, to store and sometimes sell a wide variety of seized assets. Additionally, Mr. Hirchak testified that his company waives all storage fees for property that it sells. The Debtor did not elicit testimony from Mr. Hirchak to elucidate the storage fees that the Hirchak Company charges for independent storage, or what portion of its business is devoted to storage of property it does not sell. Mr. Hirchak did testify that, although his company does not distinguish between long and short-term storage in setting storage rates, there is a wide

---

[8] Debtor's counsel stated at the conclusion of the hearing that he did not believe Vermont law limits the Sheriffs' respective "jurisdiction" in this way, but presented no evidence or case law to support this position.

14

variation in how long property is stored at his facility, and there is usually no way of determining at the outset of the storage term how long the property will actually be there. He specifically recalled some instances in which his company had stored property a county sheriff had seized, and said in those instances he always stored property in a facility which was in the same county from which the sheriff had seized it. Mr. Hirchak declined to offer an opinion on an appropriate rate for storing equipment seized by a sheriff in a county other than where his facilities are located, and therefore did not shed any light on the specific question of the reasonableness of the fees LRT and EWS charged in Washington and Rutland counties for the pieces of equipment seized in those counties.

The Debtor's owner, Robert Edward Brown, testified that his company also stores equipment, and it charges $100 per month for storage of tractor trailers and mobile homes – in stark contrast to the EWS and LRT charges of $50 to $100 per day. The Debtor's counsel did not elicit testimony from Mr. Brown about whether this storage rate applied to long-term or short-term storage, or whether the Debtor had ever stored equipment on which a sheriff had levied, or whether Mr. Brown believed $100 per month to be a reasonable rate for storage of property levied by a sheriff. While Mr. Brown's testimony came across as sincere, competent and credible, it did not directly address the particular charges at issue.

The only significant evidence the Debtor elicited that bears on the reasonableness of the rates EWS and LRT charged is that neither EWS nor LRT differentiate between long-term and short-term storage in setting their rates. However, even if the Court were to find the Debtor had presented evidence that proved some companies offer long-term storage rates and they are substantially lower than the rates LRT and EWS charged, the Debtor neither proved that the Sheriffs had the option of storing the equipment with out-of-county storage sites nor that the Sheriffs were aware of, or required to hire, the less expensive entities. [9] This Court "will not penalize attorneys, receivers or other professional persons, on the basis of hindsight, but rather will measure 'reasonableness' and 'benefit' prospectively, as of the date the services were rendered." R & G Props., 2009 Bankr. LEXIS 1318 at *9 (citing Sevitski 161 B.R. at 856). This is important because LRT, EWS, and the Sheriff of Washington county all credibly testified that use of the EWS and LRT storage facilities, as well as the fees EWS and LRT charged, were typical and customary for storage of property that had been levied by a sheriff.

Additionally, in determining what fees are to be paid in this bankruptcy case to state officers who levied the Debtor's property pre-petition and were still in possession of that property on the date the Debtor filed its bankruptcy petition, the Court must take into account the state statute under which the court officers were proceeding. See Ohakpo 494 B.R. at 282. The controlling state statute, 12 V.S.A. § 2731, requires that the property "shall be safely kept by the officer at the debtor's expense, until sold or

---

[9] There was also no evidence presented on what the corresponding increase in towing charges would have been if the Equipment had been towed to storage locations in other counties.

15

the execution is otherwise satisfied." Notably, it is silent as to how the officer is to accomplish this. It leaves to the court officer's discretion the best means for safely keeping the property. In this case, then, the Sheriffs had discretion to hire the storage companies which they determined were best suited to store and keep safe the Equipment.[10] Although the question presented, under § 543, is one of federal law, the Court must be cognizant of the standards under which the court officers were acting, and especially take into account the fact that the state statute does not impose a reasonableness standard.[11] Where, as here, the evidence regarding the accountings in general, and their reasonableness in particular, is light, the Court finds that adding in deference to the judgment of the court officers tips the scale in favor requiring the custodians and their agents be paid in this case.

In sum, the Court finds that, with respect to the accountings, the Court must provide for payment of LRT's and EWS's pre-petition and post-petition storage charges as administrative expenses because LRT and EWS have established by a preponderance of the evidence that the storage fees set out in their accountings were actually and necessarily incurred and are reasonable; and the Debtor's objection must be overruled.

### C. THE DEBTOR'S MOTIONS FOR ALLOWANCE OF THE STORAGE COMPANY CLAIMS

The Court turns next to the Debtor's motions (doc. ## 44, 45) seeking a determination of the amount and priority of the claims of LRT and EWS. The Court has found it must provide payment to LRT and EWS in this case, pursuant to § 543, and that the accountings which LRT and EWS have filed, along with the other proof they presented, establish that their charges are entitled to administrative expense priority under § 503. Therefore, LRT's and EWS's pre-petition and post-petition charges will be allowed in full as administrative expenses, and unless the Debtor establishes an offset due to damage to the Equipment or LRT and EWS consent to different treatment, the Debtor must provide for payment of these charges in the manner described in § 503 to meet the confirmation requirements of § 1129.

Fixing the amount of each claim requires resolution of discrepancies between the values set forth in the accountings and the Debtor's motions, including the duration of the storage, whether to allow charges for the Towncar and Pine Box Trailer, and how to treat the $10,000 payment the Stipulation required the Debtor to make to the storage companies. The parties presented no proof on these issues at the hearing and the Court therefore relies on the record to ascertain the amount due and the agents' right

---

[10] The fact that, in the instant case, the judgment creditor, rather than the Sheriffs, actually made the arrangements for the towing and storage of the levied property does not change the fact that it is the court officer who has the discretion to make this decision under the state statute. See Buck v. Ashley, 37 Vt. 475, 476-77 (Vt. 1865) (deputy sheriff found negligent for storing attached goods in freight depot that was not a safe or suitable place to keep goods). While the actual practice in Vermont may be for judgment creditors to make these logistical arrangements as a condition of sheriffs levying, nothing in the statute required the Sheriffs to use the storage entities the judgment creditor selected.

[11] Nowhere in 12 V.S.A. §§ 2731-2747 (personal property, levy, and sale) does a statute use the word reasonable.

to allowance on these four components of the accountings.

The Court finds first, that EWS and LRT are the most reliable sources for fixing the term of the storage and they both describe the storage term to be 116 days, that the Debtor's 117-day storage term is an error, and will compute the claim using a storage term of 116 days.

Second, since there is no dispute that the Towncar belongs to Mr. Brown individually, and is not the Debtor's property, and the custodian statute only applies to the property of a debtor, payment of the storage charges attributable to the Towncar will be denied.

By contrast, no one disputes that the Pine Box Trailer is the Debtor's property. In its accounting (doc. # 71), EWS states that it could have, but failed to, list this item on its original invoice to the Debtor (apparently through an oversight). Since EWS included the Pine Box Trailer in its accounting and it was in the control of the custodian on the date of the petition, the storage charges allocable to this item will be allowed.

Last, if the Debtor made the $10,000 payment described in the Stipulation that sum must be subtracted from the total storage charges to be paid. There is nothing in the record to indicate that the Debtor is in default of its obligations under the Stipulation, so the Court presumes that both LRT and EWS received their *pro rata* share of this $10,000 payment and will compute the amount due accordingly.

In reliance upon these determinations, the Court allows the claim of EWS as an administrative expense in the amount of $43,000 (computed as 116 days at $425 per day, minus the payment of $6,300), and allows the claim of LRT as an administrative expense in the amount of $25,300 (computed as 116 days at $250 per day, minus the payment of $3,700).

In the Stipulation, the Debtor preserved its right to seek an offset to the amount it owes to the storage companies for damages it alleges EWS and LRT caused to the Equipment (doc. # 34 at p. 3). The Debtor has not yet commenced actions seeking this relief; to the extent it timely initiates a proceeding and obtains a judgment against EWS and LRT, it would be an offset against the claims allowed in this ruling.

## V. CONCLUSION

For the reasons set forth above, the Court reaches the following conclusions of law with respect to the accountings before the Court. First, the Court must provide for payment to LaRoche Towing & Recovery, Inc. and Earth Waste & Metal Systems, pursuant to § 543, for the charges incurred in connection with the levied Equipment. Second, all pre-petition and post-petition charges LaRoche Towing & Recovery, Inc. and Earth Waste & Metal Systems list in their accountings, except for the Towncar, are eligible for administrative expense priority, under § 503, because they were actually and necessarily incurred and are reasonable. Third, LaRoche Towing & Recovery, Inc. and Earth Waste & Metal Systems, as the custodians' agents, had the burden of proof with respect to the accountings, were required

17

to prove their right to payment by a preponderance of the evidence, and they have done so. Last, under the controlling state statute, the Sheriffs had discretion to hire the entities they deemed best suited to assist them in carrying out their duty to take control of, and protect, the levied property, there is nothing in the record to indicate that they abused that discretion, and this factor weighs in favor of allowing payment of all charges incurred in connection with the levy of the Debtor's property. Consequently, the Court overrules the Debtor's Objection to the Accountings.

With respect to the Debtor's motions for a determination of the amount and priority of the storage companies' charges, the Court allows the LaRoche Towing & Recovery, Inc. and Earth Waste & Metal Systems claims with administrative expense priority in the amount of $25,300 and $43,000, respectively, subject to the Debtor's right to timely demonstrate a right of offset.

This constitutes the Court's findings of fact and conclusions of law.

September 18, 2013  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge